ARMSTRONG *vs.* MUNDAY.

Where in a contract for the sale of land, the vendee covenanted to pay a certain sum for the premises, of which an amount specified was to be paid to the vendor, and to A. B. and C. D., respectively, such sum as the vendor at the time of the execution of the deed should direct, not to exceed in the aggregate the amount to be paid for the land; and the vendor directed a certain sum to be paid to A. B., and nothing to C. D., requiring the balance to be paid to himself; but the vendee persisted in paying a certain sum to C. D.; *held* that such payment was unauthorized, and that the vendor could recover it of the vendee.

*Held also,* that parol evidence was inadmissible to show that the premises were encumbered by a mortgage which the vendor had given to C. D., and that at the making of the contract the vendor had agreed absolutely that the vendee might pay the amount of the mortgage to C. D.

And when the vendor, in the case mentioned, had filed a bill against C. D. to set aside the mortgage held by the latter, for usury, who besides denying the usury set up the payment made by the vendee as above mentioned, and the decree affirmed that payment as made by the authority of the vendor; *held* that such decree being between other parties was not evidence against the vendor in an action of covenant against the vendee for the balance of the purchase money.

COVENANT, tried at the Allegany circuit in October, 1844, before B. WHITING, Cir. Judge. The action was by the vendor on a contract for the sale of lands, which was in the following words :

"An article of agreement made the 11th day of December, 1838, between Henry Armstrong, of, &c. of the first part, and Stephen Munday of the same place of the second part, wit

nesseth, that the party of the first part for and in consideration of three thousand five hundred dollars, to be paid him as here-inafter expressed, hath granted, bargained and sold, and by these presents doth grant, bargain and sell to the said party of the second part, all that certain tract, &c. [describing the premises.] The party of the second part agrees to pay the party of the first part, ten hundred and eighty-five dollars on the first day of March next; also such further sum to Frederick Munday as the party of the first part shall direct, at the time of the delivery of the deed; also such further sum to Hiram Holliday as the party of the first part shall direct at the said time of delivering said deed; and it is understood that the sum the said party of the first part shall direct to be paid to the said Holliday is to be paid in three equal annual instalments, with lawful interest from the delivery of said deed to the party of the second part; and all the said sums abovementioned are not to exceed three thousand five hundred dollars. And the party of the first part doth hereby bind himself, his heirs, ex-ecutors and administrators to make and deliver to the party of the second part, on his fulfilling the conditions of the above contract, a good and sufficient warranty deed. And the said party of the second part doth hereby bind himself to do and fulfil all on his part expressed in the above contract on or before the first day of March next. Signed and sealed," &c.

The declaration averred performance by the plaintiff, that the plaintiff had, on the 1st day of March, 1839, directed the defendant to pay Frederick Munday $1415,10, *and not to pay any thing to Holliday*, but to pay the balance beyond the $1415,10 to him the plaintiff. Breach, non-payment to the plaintiff of the balance beyond $1415,10. Plea, *non est factum*, with notice of special matter.

The plaintiff gave the contract in evidence. Two payments were endorsed upon it, viz.: on the 11th of February, 1839, $110,80, and on the 4th of March in the same year, $2389,20. The plaintiff claimed that there was due $1000 with interest thereon from March 1, 1839. It appeared that on the 1st of March, 1839, the plaintiff conveyed the premises to the defen-

dant, and that about that time the defendant asked the plaintiff what sum he should pay to Holliday, to which the plaintiff answered that he must not pay Holliday any thing. The defendant said he should pay the balance to Holliday, but the plaintiff directed him not to do so. The plaintiff rested.

By the defendant's evidence it appeared that the plaintiff, on the 1st day of September, 1836, had mortgaged the same premises which he subsequently contracted to sell to the defendant, to Hiram Holliday, to secure the payment of $1174,30; and that on the 9th day of November, 1838, he filed a bill in chancery before the vice chancellor of the sixth circuit, against Holliday, to have this mortgage cancelled on the ground that it was given upon an usurious consideration. Issue in that suit was joined, the defendant denying the usury and setting up the payment by the defendant in this suit, as heretofore mentioned, as an adjustment of the mortgage. Proofs were taken, and a decree was made. The pleadings and proofs in that suit were given in evidence by consent, subject to all legal exceptions, and it was agreed that such part of the testimony as was applicable to this suit should be received as though given in this cause, subject to any objections to its competency. The evidence tended to show that the mortgage to Holliday was usurious. A witness testified that when the contract between the plaintiff and the defendant in this suit was executed, it was agreed by parol between the parties, that the defendant should have the right to pay off the mortgage to Holliday, he having objected to purchasing the premises except upon that condition, and that the contract was written in the manner it was, because it was not known what the precise sum was which was due upon the mortgage; and that the defendant, before executing the contract, had an understanding with Holliday, that the latter would give him time to make the payment in case he should purchase the land of the plaintiff. It was also proved that on the 4th day of July, 1839, the defendant in this suit gave to Holliday his promissory notes for the amount due on the mortgage, being about $1000, and Holliday thereupon acknowledged satisfaction of that instrument, and gave to the defendant a

oond of indemnity against the claims of the plaintiff to recover the amount thus secured to be paid to Holliday. The vice chancellor held that the mortgage was usurious, but that the arrangement between the plaintiff and defendant in this suit, at the time of the execution of the contract of sale, which he considered well proved by parol evidence, authorized the defendant to pay off the mortgage to Holliday. He accordingly held that the payment to Holliday was a good payment and concluded the complainant in that suit—the plaintiff here—but ordered that Holliday should pay the costs of that suit.

The defendant insisted to the circuit judge that the facts appearing by the testimony in the chancery suit, if true, did not furnish a defence to this action. The judge, by the consent of the parties, directed a verdict to be taken for the plaintiff for $1100, subject to the opinion of the supreme court.

*Z. A. Leland,* for the plaintiff.

*M. Grover & H. R. Selden,* for the defendant.

*By the Court,* BEARDSLEY, C. J. The first point made by the counsel for the defendant is, that the breach of covenant complained of in the declaration is the non-payment of $1085, which the defendant covenanted to pay the plaintiff, and that amount having been paid to the plaintiff as was proved on the trial, it is insisted the defendant was entitled to a verdict. This objection rests on a misapprehension of what is alleged in the declaration. The breach assigned is the non-payment to the plaintiff of the residue of the sum of $3500 mentioned in the covenant, over and above the $1415,10, directed to be paid to Frederick Munday, and not the non-payment of $1085 only, as the objection assumes. The declaration virtually admits the payment to Frederick Munday of $1415,10, the breach alleged being that the residue of said $3500, that is, $2084,90, had not been paid to the plaintiff. It is not pretended that the last named sum had been paid directly to the plaintiff, but it is insisted that the amount paid by the defendant to Holliday was

in law a payment to the plaintiff, and this seems to be the only material question in the case.

The second point made by the defendant is that by the covenant the defendant was to pay the plaintiff only $1085, and to Frederick Munday and Hiram Holliday $2415, in such portions as the plaintiff should direct; that the plaintiff directed $1415,10 to be paid to Frederick Munday, which left $999,90 for Hiram Holliday, which the defendant paid. This sum the defendant was bound to pay to Holliday. The plaintiff, it is alleged, has no right to this money on this covenant.

It was not contended on the argument of this case, as seems to have been held in the chancery case, that evidence was admissible to show that it was agreed by parol between the parties to the covenant at the time of its execution, that the defendant should pay to Holliday the amount alleged to be due to him from the plaintiff. Such evidence was wholly inadmissible on the well known principle that parol evidence cannot be received to contradict, enlarge, restrict or qualify a contract when reduced to writing. The writing must be taken to express the entire agreement between the parties. (1 *Phil. Ev.* 561; *Cowen & Hill's Notes, p.* 1466.) Looking at this covenant alone, its true meaning, as I think, is, that the defendant would pay the full sum of $3500 to the plaintiff, unless he should direct that some part thereof should be paid to Frederick Munday and Hiram Holliday. There is nothing on the face of the written agreement to indicate that any precise sum should be paid to either of the persons last named, or to show that the defendant had any interest in that question; and upon the terms of the covenant it cannot be *construed* to secure any interest the defendant might have that the payment should be made to Frederick Munday or Holliday. If the plaintiff had directed only a single dollar to be paid to each of the persons named in the covenant, the balance, that is, $3498, would indisputably have been payable to the plaintiff himself, and if no direction to pay either of said persons had been given by the plaintiff, the whole sum would have been his due. The defendant, as far as is shown by the covenant, had no interest in that question, and

could not insist on making any payment to F. Munday or Holliday. And as no direction was given to make a payment to the latter, the amount paid to him, by the defendant, was without authority, and cannot be allowed to prejudice the plaintiff.

This covenant was very badly drawn, but still, it may, as I think, be understood. Its true meaning, as it seems to me, was that the plaintiff would execute the deed on the 1st of March, 1839, the defendant at the same time paying to the plaintiff $1085, and to F. Munday such sum as the plaintiff might direct. As to the residue of the principal sum of $3500, the plaintiff might direct it to be paid to Holliday, in which event the defendant was to be allowed three years to make the payment; and if no such direction was given, the defendant would, perhaps, be entitled to the same credit from the plaintiff himself. Such is my understanding of the agreement between these parties, as carried into the covenant, although it is quite manifest that what was written does not express what was really intended by the parties. Parol evidence, however, cannot be received to control or change what is in writing, and the covenant must be carried into effect, as it would be, if such had been what was really intended by the parties.

It must for the purpose of the case as now presented, be assumed that the $1085 were paid to the plaintiff on the day specified, and that $1415,10 were paid to F. Munday as directed by the plaintiff. The plaintiff at the same time executed a deed to the defendant as required by the covenant. If these payments were made as supposed, there remained due on the covenant $999,90, for which the plaintiff was entitled to recover, the payment made by the defendant to Holliday being in no just sense a payment on this covenant.

The only other point made by the counsel for the defendant was that in which he asserts that the decree in the chancery suit is conclusive between the parties as to the validity of the payment to Holliday. This cannot be maintained. So far from being "conclusive" on the point, the decree does not in any degree affect it. The decree was not between these parties, nor is the defendant in

privity with Holliday so that it can, on that ground, be set up by him against the plaintiff. The payment to Holliday was voluntary, for he had no claim on the defendant, and the latter gained nothing by that payment or by the decree founded upon it. The fact that such payment had been made, was not, indeed, properly in question in the chancery case. The point in issue there was the fact of usury, and if this alleged payment was deemed to be material it could only be brought out in that case by a cross-bill. But it is unnecessary to pursue this subject. On the case, as now presented, the plaintiff is entitled to judgment.

Judgment for the plaintiff.